There's two issues to which I'd like to direct my comments at this point. The rest I'll just submit it on the briefs. The primary issue is the efficacy of the jury waiver in this case. The written waiver was submitted apparently prior to the date that it was discussed in court. The Court appears to have granted the jury waiver before the colloquy was even taken in this case. The colloquy really wasn't a colloquy on the merits of the issues at all. I mean, it was simply a question of, gee, is this a document, is this a document to sign? Mr. Bailon-Santana didn't have any real input at that time while it was being taken up in open court. I suppose the question, though, that the counsel — the question is, can we accept the State counsel represented to the Court that he had interpreted the written jury waiver to his client? I would submit no, and on two levels. One, the notion that counsel can act for an interpreter officially on a court proceeding for his own client I think puts counsel in essentially a conflict of interest situation. Number two, we don't know the depth of counsel's understanding of the Spanish language. I know he signed a document that said he's fluent in the Spanish language, but the word fluent is relative. I could indicate I'm fluent in Spanish, and indeed I am in large part, but I would not purport to be able to interpret officially for a client of mine. I can talk to clients, but — and I know a lot of Spanish surnames. Is there something in the waiver that you've presented that your client didn't — wasn't explained to your client? Is there something — is there any evidence that he — that there wasn't any shortcoming in the — Yes. The short answer to that is yes. And the reason for the short answer being yes, as indicated in Appellant's both opening brief and in the closing of the reply brief, there are certain factors that are outlined in Mann v. Thalacker that should be given as part of the explanation before a jury waiver is accepted that were not included in the form that we're dealing with in the present case. Well, counsel, that's a different question. I thought the question was whether or not there was any shortcoming in the translation that's been articulated specifically. I think I can answer that on two levels. I think the shortcomings that have been outlined by Appellant in this case are on both levels. First, there's the question of how good was the translation itself. And we don't know that. We do know that the attorney was not a court-certified interpreter, which the Interpreters Act would seem to require. That much we know from the start. The second level on which we've challenged the jury waiver. Let's stay on one level, okay? Sure. Which is the level I asked you the question. Now listen to the question and try to answer it, okay? I will. Is there any case we have that the translation was defective? Is there anything that you've indicated or I could suggest that your client got a bad form that he doesn't understand or wasn't explained to him? On this record, there's no way to determine that. So the answer to the court's question more directly is no, there's not an indication of that. What we have is a failure of the record to establish that the translation was adequate. But if the court is asking, is there something on the record which expressly states the defendant didn't understand something or something you didn't try to put an affidavit or anything like that on this direct appeal? No. Well, you didn't raise this issue below. I was not the attorney below. It was not raised below. Nobody tried. I'm sorry. I didn't mean to cut the cord off. It was not raised below. The problem is that the attorney who handled the case throughout all the proceedings below is the same attorney who signed off as the interpreter for this document. I did not take the case on until it went up on direct appeal. So the answer is I was not present, nor was any attorney that was different from the present to raise those issues. Nobody was. So if there's a question, was some affidavit raised on a motion for a new trial or a motion to withdraw the jury waiver or something of that nature, the answer is no. But that's because the same attorney handled the case all the way throughout, all the way through sentencing. And a change in attorney was not made until the matter went up on appeal. What's your best case for what has to be shown in open court with regard to a jury waiver? Two cases read together. One would be Duarte v. Gareda, and the other would be Mann v. Thalacker. And there's a four- or five-part requirement that is laid out in the page. Mann v. Thalacker cited at the appellant's reply brief at page 6. And it says the district court should inform the defendant that 12 members of the community compose a jury, and that's not part of our waiver. There's 12 members mentioned, but it doesn't say where they come from in the written waiver. That the defendant may take part in jury selection, there's no mention of that in our waiver. Ginsburg-Cooker That's an Eighth Circuit case. Verrilli,, that's correct. It's consistent, however. It cites for its authority, and it's really quoting from Duarte v. Gareda. I'll strike that. United States v. Duarte v. Gareda, which is a Ninth Circuit case. And so it's drawing on Ninth Circuit law. It's simply a good explanation or a good exposition of the holding in Duarte v. Gareda. Ginsburg-Cooker Okay. So in Duarte, which of the elements are you contending was not included? Verrilli,, okay. Specifically, the defendant was not told expressly that the 12 members of the jury would be selected from the community at large. Number two, he was not told that he would be allowed to take part in the jury selection. Number three, he was not expressly told that the court alone would decide guilt or innocence if he waived jury. There's not an express, flat-out explanation. Ginsburg-Cooker You mean in the colloquy or in the ever, even in the waiver? Verrilli,, ever, in either. The colloquy was really no colloquy. We have this paperwork here that's been signed. Everybody on board for that, and there was no objection or anything. And they simply proceeded on to other issues. So the issue never got fleshed out. And that's precisely the problem that was underlined in Duarte-Gareda, which is when a defendant has a special problem, special deficit, if you want to call it that, such as he's a Spanish speaker or some other problem that would fall into a similar category, the court is required to make an on-the-record inquiry to determine if the defendant really understands the four categories that I just outlined for the court. Kennedy Is this the kind of thing we can take up on appeal anyway? I mean, we've got, we don't really know what the attorney explained to his client. You know, we have a certification here. Isn't this kind of claim best raised by way of habeas? Verrilli,, no. Actually, you can put an affidavit as to what your client was, from your client as to what he was told. We can look at the lawyer, hear what the lawyer says. He explained. In some other case, may it please the Court, in some other case where the on-the-record indications are sufficient to support the jury waiver, it might be appropriate to raise by way of a 2255 petition or something that the on-the-record showing that was, appears to be sufficient is in reality not sufficient and to go behind it. In a case such as this one, where the record fails to demonstrate an adequate waiver for two reasons, one, because of the language problem, two, because there's not a sufficient, three reasons really, there's not a sufficient on-the-record colloquy, and number three, because the waiver that is on the record is legally inadequate. It is insufficient as a matter of law. It is not necessary to resort to affidavits or other forms of proof. We don't need to go behind the record. The record is simply inadequate to support the jury waiver, and under Duarte-Figueredo, that is, I think, all we need to show on this appeal. I'm sorry, the Court looked like it had a question. Kennedy, who's got the burden of showing that there is a good waiver? The record must show that there's an affirmative waiver. It has to show it on the record in order for it to be valid. That's under Duarte or? Yes. Yes. And I think that from an appellant standpoint, it may be our burden to point out where the record's deficient, but we've done that. And I think beyond that, it's the government's burden and the record's burden to show that there was a valid waiver, and this record does not do so. Counsel, isn't Duarte more of a guidelines case? It's not mandating that those strictures be followed in every case. It's kind of a guideline for the Court to follow. And what case do you have that failure to meet one of those guidelines is a constitutional violation? I don't know that there is one case that would state a failure to follow one of those guidelines if all of the other guidelines are filled in, is itself inadequate to support the waiver. I think the best cases on point are the ones that are cited in the brief, and it's highly rated in Duarte, and the cases that follow it. Duarte says, you know, has one paragraph that has four requirements that says that this may only be waived immediately for these four things. Then it has this other paragraph that talks in terms of should do this, and the Court should explain that, should question the defendant. You know, it's, as well as it says, it's more of a handbook, a sort of a guidebook as to how things ought to be done. I'm prepared to respond to that if the Court's ready for me to. Yeah, I don't, I mean, you take that to be a ruling? I take it to be the following. In a case where the defendant has some deficit, such as he speaks Spanish, he's not an English speaker, and we're dealing with what is essentially just a written waiver case, the Court, number one, has to make an appropriate on-the-record inquiry of the defendant. There has to be a colloquy establishing that the Court has recognized the problem and has proceeded to be sure that the defendant really does understand the waiver, its consequences, and its applications. Our record completely fails to do that. But, Counsel, didn't Duarte say that the written waiver creates a presumption and that there is no colloquy required in that case, no questioning required? The written waiver generates, in most cases, but not the ones like this one, in most cases, a kind of a rebuttable presumption. And my brief addresses that very issue. In a case like this where the defendant is a Spanish speaker, in a case like this where there's been no colloquy on the record, in a case like this where the written waiver is on its face deficient, the Court was under an obligation to proceed further in open court with a colloquy that would establish the validity of the waiver. The purported presumption is rebutted by our record. But the Court did ask if the waiver were done voluntarily. Not really. Actually, what the Court did, if I may, before the Court even took up the question with anybody, the Court, and this is excerpts of record at page 41, says, Let me confirm with Counsel that the parties wish to proceed in accordance with the jury waiver which has been – which previously has been received. And then it goes over to page 42 of expert – of the excerpts of record, and it says, The Court has granted the parties' request for jury waiver, and this was previously filed. And so I want to confirm with both parties and defendant that this is how they wish to proceed. During that entire colloquy, there's no real colloquy with the defendant at all. There's one question. On Mr. Bailon-Centana, you gave up your right to jury trial, set forth in writing that you signed back on September 22, 2003. Is that correct? And the interpreter says yes. Now, we're not quite sure that's emanating from Appellant himself, but let's suppose that it does. That doesn't get into any real colloquy about do you understand it, is it voluntary, or is it a claim? It's a claim of our requirement because the waiver has to be in writing. Yes. But the waiver – the waiver – I want to spare – save some time for the remaining issue I want to address. But the waiver is inefficient or inadequate on its case, number one. And more importantly, number two, the case law, including Duarte-Gigoret and the other cases behind it, all suggest that when there's a special problem such as language, a language barrier, the court has to go further, and the written waiver is not adequate by itself. You then have – the court then has to make a colloquy to determine and be sure that the defendant really understands what he's doing. And that wasn't done in this case. And on top of that, if we looked at the writing of the – of the waiver, it's inadequate. It doesn't tell the defendant enough. So even if you assume that he understood it all, it still doesn't tell him enough. And so it's not adequate as a matter of law, and therefore, we don't need other – other affidavits to get that far. It is simply an inadequate jury waiver, as is the case in Duarte-Gigoreta and the other cases that we've cited. Having said that, if the Court has other questions, I'm happy to answer them all, but there was another matter that I wanted to address, if I may. Okay. Thank you. This has to do with the career offender status issues and the impact of both Booker and Shepard, and the case that was cited by Appellon himself in the 28J letter, which is the NGO case in 406 Fed 3rd at 839. Two things, I think, appear to be – or three things appear to be particularly important in this context. First of all, looking at it as a guidelines matter, and looking at it as a mandatory guidelines matter, which is how the Court viewed it at the time of sentencing, there is no question but that the defendant's prior conviction-slash-convictions, plural, were all consolidated formally into one proceeding. He was sentenced. It doesn't matter. It doesn't matter, because it was separated by an arrest. Well, that's the point I was getting to. There's two points on that that I wanted to address. The point that you briefed manages to sweep under the carpet. That is the point. It's the only point, really. Well, I don't see it that way. You don't get to the part of the guideline that talks about getting – about whether they're consolidated or not if the two events are separated by an arrest. I understand that aspect of the commentary to the guidelines. That's why no doesn't apply. I have addressed that in the briefs, and I'd like to address that real briefly. I've got three minutes left, and I'd like to address that real briefly right now. And the problem is several-fold. First of all, post-Shepherd, I think that that aspect becomes a factual finding, because the question of whether or not there's an intervening arrest is a factual matter, very much as outlined in the Seventh Circuit decision in the no case. Post-Shepherd, there has to be some reliable form of evidence upon which to hang your hat for that. In this case, it's interesting because if one looks at the documents relating to the prior case, there was a crime-bail-crime allegation which would suggest that there was probably an intervening arrest. There's even some comments by counsel at the time of sentencing, unfortunately, where he's referring to his thoughts of what might have occurred. But Shepherd would seem to require something more formal than that in terms of allowing the Court a basis to so conclude. It would seem that post-Shepherd, that kind of a – and let me back up and say one thing, too. The factual basis on the plea that was taken in the State court case doesn't address the crime-bail-crime issue. And the crime-bail-crime issue – the crime-bail-crime allegation, although – and I use the word dismissed in my brief, and I want to correct that. It's stricken is the proper term, because it was stricken at the time of sentencing on motion of the people of the State of California at the time of sentencing. But there's no factual basis. There's no direct admission by the defendant that there was an intervening arrest. And so what do we use for a factual basis to determine whether or not there was an intervening arrest? We do have the fact of different dates for the offenses, but that by itself doesn't establish the intervening arrest. What does establish it is really there isn't any reliable evidence, and I think post-Shepherd that's a real issue. The final question, it seems to me, and I think this is fairly clear, is the sentencing judge in this case, once it made the findings that related to the career offender status, felt that it was mandatory and binding to simply impose the sentence that was indicated by that. Post the on-bank decision in Ammaline, I don't think that one, I think, has to be remanded for resentencing, because the Court sentenced as though that was a mandatory as opposed to an advisory guideline mandate. Interestingly enough, that really --. You're asking for an Ammaline remand? Yes. Absolutely. Absolutely. Could do worse. Pardon me? Could do worse. Could get back to the 57 months. We would just have to take that chance, Your Honor. You don't have to. It's a choice. We are requesting that, yes. The Court viewed it as a mandatory and gave him 360 months. We could do worse, but then again, he may not live much longer than the 360 months anyway. Pardon me? Probably not much worse. That's kind of what I mean. And he'll take that chance because, after all, he may not make the 360 months. I don't mean to sound macabre with that, but there's a serious problem when it's 360 months is the sentence. And the Court clearly said that it felt bound to sentence, you know, according to the findings that she had made. So I think that's appropriate. If there's any other questions, I have reserved what looks like seven seconds. I'm seven seconds over. I guess I didn't reserve anything. Okay. We'll hear from the governors. May it please the Court. Nancy Spiegel for Plaintiff's Appeal of the United States. Regarding the issue of the jury trial waiver, the standard of review here is plain error. As the Court has pointed out, this was not objected to below. And as the Court has also pointed out, because there's a written waiver here, there is a presumption of validity of the jury trial waiver. Now, in the What do we do about a translation? Well, what happens there is If you have somebody who's a certified translator, then we know, we have some assurance that his level of the other language is adequate. Presumably a certified translator gets certified by testing or, you know, some such procedure. Whereas there may be lots of people who are fluent in Spanish or fluent in another language that may not be able to talk legal, you know, may have grown up speaking the language. And, you know, I mean, I grew up speaking German, but I can't speak, I couldn't translate a legal document because it's just not something. So just being fluent in a language doesn't mean that you are able to translate a somewhat sophisticated legal document. We have no assurance of that at all. Well, the assurance is the presumption that it's valid. And on the face of the agreement, the attorney represented that not only was he fluent in both languages, but that he had also translated it accurately. So now it becomes. Well, how does he know? Well, it's one of those things. If you, if you, if you, if you, how can he, how can he certify himself? He may think he translated it accurately, but maybe he translated it inaccurately. He wouldn't know. He could swear truthfully that he translated it accurately, but. But there is no evidence before the Court, and there's no contention now that the translation was inaccurate. So because the writing was presumed to be valid, the defendant has to show some reason that we would doubt the validity, the accuracy of the translation. The beginning of his, I mean, the presumption would be fine if it was, if the written document were in a language that the defendant understood. But it doesn't seem to me that a presumption automatically arises when somebody signs off on a statement in a language it doesn't understand. Well, in the Duarte case, the facts were that there were no facts that showed that the waiver had ever been translated or read to the defendant in Spanish. And that was different. Obviously, the facts are very different here. Nor did the Court at any point in time in Duarte inquire on the record just to confirm that the defendant was sure of what he was doing. Here, even though the colloquy was short, and maybe it would be preferable for it to be longer, this Court has never required, and still doesn't require, a long colloquy. And again, here, the Court did ask the defendant himself if he had still planned to go through with the waiver. He asked the attorney. If the attorney was sure that he had explained everything to the defendant, he assured the Court that he had. I mean, the district court did a poor job of it. I mean, normally when an important constitutional right is being waived in open court, most district judges that think about it at all, that have any interest in the matter, would go over what the rights given are, being given up, right there in court, and make sure that the defendant has. I mean, that's why, you know, that happens when you take a guilty plea. Of course, that's required by Rule 11. But there are many other number of things. Let's say somebody wants to give up the right to counsel. The Court usually asks questions to make sure that the defendant understands the dangers of self-representation, and so on. Giving up the right to jury is pretty big stuff, and it's really quite unusual for a judge, that's it, that she wouldn't go through and ask specific questions, making sure that the defendant... I mean, I've never seen a case where that's... I mean, I guess we don't get that many jury waiver cases, but such as I've seen, I've never seen anybody accept a waiver quite so quickly, particularly one that's translated. Now, what was the government doing when this was going on? Why didn't the government speak up and say, you know, I don't know, you should... Why don't you check and make sure he understands his rights? Well, I can only presume that because a more detailed colloquy was not required by the law, that that's why what happened happened. Now, it's clear that a more detailed colloquy, especially in this circumstance, is preferable. Well, what do I have to do? I have to assess quite clearly what ought to happen. Now, we can talk about what's binding me. It says, you know, it's got to be in writing, and it's got this whole paragraph that says, oh, the court should inform the defendant that twelve members of the community compose a jury. That's not in there. The defendant may take part in the jury selection. The jury verdict must be unanimous. The court alone decides guilt or innocence if the defendant waives a jury trial. None of that stuff is in there. You know, it actually, you know, pretty clearly laid out the kinds of things that the court should take up with the defendant. Well, two of those are contained in the written waiver itself. The twelve members are a jury, and that the jury verdict must be unanimous. And in addition, the little introduction there in Duarte says that we've previously set forth guidelines for district court to follow. So, again, guidelines suggest something that's preferable and should be done, but doesn't constitute error, let alone plain error, if it's not done. But if you look at Duarte, it doesn't just talk about what's included in the waiver. It talks about the colloquy. You know what colloquy means? Yes. Yes, sir. So, like in Shakespeare, you've got your soliloquy and your colloquy, and there are two people talking back and forth. In the case of somebody with a speaking a different language, there'll be three people talking. Where's the colloquy here? Where is the back and forth? Where is the judge looking the defendant in the eye and satisfying herself that she is, that the defendant really understands what's going on? Nothing like that happened here. It's brief. The colloquy was brief. It was. That's an extraordinary thing to give up the right to a jury trial. You'd have to be really dumb to do it. Well, I presume that, in this case, the defendant and his counsel had good reason to choose to receive this waiver. Maybe there was some. I don't know. Last time I accepted a jury trial waiver, I told the defendant he was dumb and shouldn't do it. He did it anyway. You're convicted. You know, this is not something that one should take lightly. I'm very surprised. I mean, just startled. It's just an excellent judge. I'm just really, really surprised. I suppose Homer nods to her, right? I mean, I think it was just a slip. Well, even if the court feels that the colloquy should have been more detailed and perhaps it should have been. I think more detailed is suggesting it was detailed at all. There was no colloquy. There was no colloquy at all. Well, there's certainly more of a colloquy here than there was in Duarte. I mean, in Duarte, the court, the district court didn't even address the defendant at all, or defense counsel here at least. The court addressed the defendant, did look him in the eye and ask if that was really what he wanted to do. The actual jury waiver form was tailored specifically for this case. It wasn't just a form waiver. And again, it contained several assurances that the defendant was knowingly and voluntarily waiving his right to a jury trial. How do we know? I mean, this is somebody who comes from a different country. I don't even know if they have, was he Mexico or? He's a Spanish speaker, so. He's Spanish. You know, so he's one of those countries south of here, right? Right. You know the countries north of here, or the country north of here has juries because they have a system of not different from our own. But I can't tell you. I don't know. I've lived here for many years in Southern California, but I don't even know if they have juries in places like Mexico, in that system. I think not. I just don't know. I can't sit here and even tell you whether if you try to translate the word juror into our system of justice would even understand what this thing was. The idea that you actually have 12 people from the community and they get selected, you get a chance to decide, you know, to knock some of them out, you know, they don't, you know, your lawyer gets to ask questions or the judge gets to ask questions or the judge gets to object. And those 12 people all have to agree, every single one of them, all 12 have to agree that you're guilty before you can get to prison. If one of them says no, you can't get convicted. That's an extraordinary concept. It's a concept we live with, but it's not universal. It's not something that anybody in the world would understand. It's not even true in places like Louisiana, where you're convicted with 11 jurors. So I, you know, if you ask me, I'm not convinced that this guy knew what he was doing. Counsel, we know that the defendant had prior convictions. Do we know whether or not he had been subjected to a jury before for those prior convictions? No, he had pled guilty in both cases. Okay. And what's the standard? What do we look for for a plain error finding? What would the defendant have to show? Well, the most analogous context, I think, is in Rule 11 cases. And there, the Supreme Court has held that you have to show there's a reasonable probability that but for the error, the defendant would not have proceeded. In other words, here, but for the error in not engaging in a further colloquy. No, that's not the standard. That's the standard for harmless error. That's not the standard for plain error. For plain error. Error has to be obvious and prejudicial. Right. Obvious and prejudicial. Now, isn't prejudice presumed? I mean, if there's error, it is structural error. Yep. Well. If error, it is structural error. If there's error. There's no harmless error analysis. That's right. But if there's error here, the challenge is to the colloquy. Counsel, you're conceding if there's error here, that it's structural error. No. That's what you said in response to the judge's question. No. I'm sorry. I thought you were. It's different from plain error. The only reason the structural error matters is in terms of figuring out the prejudice prong of the plain error analysis. Right. Okay? So if what you said, you know, one of the components of deciding whether it's plain error is, was it obvious or was it prejudicial? Right. When it gets to prejudicial, you have to do with the fact that this is a structural error and therefore automatically prejudicial. So I think you're down to whether the error is plain, whether the error is obvious. Well. I think that's all you've got left. If the error isn't necessarily, if the error was structural, then Your Honor's correct, but this error would not necessarily be structural. Again, in the Rule 11 context, where a district court fails to advise of one or more. I thought it was pretty clear that a bad jury waiver is structural error, and that's something to come to his head. I don't know if there's anything wrong about that. The prejudice is inherent. Prejudice is that you didn't get to have your case decided by a jury. So if the waiver is bad, then we've got a real problem on the prejudice prong. Because he's deprived of his right to a jury trial. That's right. But here, what the issue is, is whether he was entitled to a more detailed colloquy. That's the issue that's before the court. That's the error part of it. Much of this does come down to the question whether the court was entitled to accept the representation of the defense attorney that he had translated this thing. And that's, maybe that's an arguable issue. I don't know. Well, in the absence of any evidence to the contrary, in other words, there's no suggestion that the attorney translated it poorly. And the Court did suggest that perhaps if that issue, if the defendant wants to raise that issue, that the translation was improper. That is, more properly raised in a collateral attack. Here, the state of the record is what has to be looked at. And the state of the record is a representation from the attorney that he had correctly translated this document to the defendant that he had advised him of all consequences of waiving a jury trial, a couple of which were specified. How do we know that his knowledge of the language is as good as he thinks it is? I'm not saying he's lying. But he says, look, I'm fluent. I was capable of translating this document. And what assurance do we have that he isn't just working on high school Spanish? And, you know, he can look at all the words. And he used the dictionary. And sure enough, he translated every single word. But they didn't translate the concept behind them. Well, again, I think the answer is he's attesting to that that's under oath. He believes it. He is truthfully telling us. But he's not certified. He's not in any way been objectively determined to be competent to do this thing. He hasn't been subject to any tests. He hasn't been subject to any certifications. We don't know anything about how good he is. And he may be perfectly satisfied that he did a good job. But that doesn't mean anything, does it? Well, the fact that he's not certified isn't required in terms of executing this document. It's required in the court proceedings. And, of course, an interpreter was present there. Although essentially he's doing what a court interpreter is doing. He is translating something over which the court must be satisfied the defendant has an understanding. So he's acting as a conduit between the defendant and the court in order to provide the court information the court must have in order to accept the waiver. So he's doing a job that is exactly like the job of a court translator. And yet he's not certified. We know nothing about his ability to... I mean, he has a Spanish-sounding name, I can say that. But I must tell you, I meet many people in Los Angeles with Spanish-sounding names who are second and third generation who know a lot of Spanish. They don't speak much Spanish at all. So I don't think the name can tell us much about his ability to translate this form. Nor can his self-satisfaction tell us anything for sure, can it? The fact that he thinks he did a good job. Well, I think the law requires that the presumption of validity attaches here in the absence of any evidence that would tend to rebut it. And there has been no evidence... I'm sorry, where in the law is this? Is the presumption of validity? Well, that's in the case of United States v. Cochran. And it's again affirmed in... That dealt with the translation issue? No, no, that's the written document. The fact of the written document originally... I just came to point it out to you about 20 minutes ago that all works fine if you're dealing with a document that is in the language spoken by the declarant. Then you can say, look, he sat here at it. Most people in our society know how to read. He told us here at it, so we can presume that he understood it. That's sort of how things work. Very different when you introduce a language problem and then you have to be sure that the person doing the translating has competently conveyed the meaning of what's on the page to the person who is doing the waving. That's an extra step in there. If a translator is incompetent, even though he may think he's competent, if he's in fact incompetent, then what's on the page will not have gotten to the defendant. I mean, it's a simple proposition. But there's been no contention that the translation was incorrect or inaccurate. So the presumption is that the written document... But the court must be satisfied that in fact the defendant has waived his rights. And how can the court be satisfied that the defendant has waived his rights if there is no authenticated way of knowing that the person doing the translating knows what he's doing? If you've got a certified translator, you say, OK, we know that this person has been tested and is certified, can do this thing. Here we have just some guy with a Spanish name who says, don't worry, I translated for him. For all we know, he just thought it would be easier to try a case. You know, he had a vacation coming up and he thought it would be quicker and easier to try a case with a judge and get in and out. We don't know. How do we solve this problem? How would you argue an opinion saying, it's cool, this is fine? Well, again, Your Honor, I would contend that the defendant has failed to meet his burden of showing that there was plain error in the colloquy based on the case law. OK. That the government listened to. You have minus nine seconds. If you would like a minute for rebuttal. I would like one minute. I'll keep this very terse. First of all, I think the Court's query hits it right on the head on a couple of points. First of all, the presumption, if such it is, is rebutted by the fact that there's a language problem and is rebutted by the fact that there's no certified interpreter. That's what rebutts it. OK. That's when the case law requires viewing that the district court should have conducted a colloquy because the presumption is rebutted. And that answers the question in that sense. But, counsel, there was a certified interpreter who asked the defendant whether or not he had, he agreed with the plea waiver. That part of it, there was a certified interpreter. If I may, actually, I was just reexamining that. That was the next point I was going to get to. Because the Court is also correct that there really was no colloquy at all. The Court's comment, first comment, which would have been translated is the Court has granted the party's request for a jury waiver. Meaning before any discussion had happened, the Court said it's a done deal. But that's OK, because the Court can go back and say I granted this improvidently if the Court later finds that there is a problem with it. So that's not really a big deal. I agree with that, except that what follows thereafter, it puts what Your Honor just indicated in its context, which is the very next thing that's said, I want to confirm with both parties, the defendant and the defendant, this is how they wish to proceed. Mr. Bailon-Santana was never asked the question, did you understand what was in the written waiver? What was he asked? He wasn't asked anything. He was told something. And that's what I was getting to. He was told, on Mr. Bailon-Santana, you gave up, past tense, your right to jury trial set forth in the writing that you signed back on September 22, 2003. Is that correct? The interpreter responds with the word, yes. No further question. No further question. I see what happens. The interpreter responds once the defendant responds. I'm not putting a lot of emphasis on the fact that it's the interpreter that responds as opposed to the defendant, except that there is no back and forth between the judge and the defendant at all. What I'm trying to say is the statement that would have been interpreted at that point was a statement by the Court. She never asked the question, did you understand what that waiver means? Do you understand what your client or what your lawyer said? He was never asked any of that at any point. He was just told, you waived it, didn't you? And he says, assuming that the interpreter's statement is his, he says, yes. But that's it. There's no back and forth. There's nothing. Okay. And what I'm trying to indicate is that, based on the language barrier and based on the fact that on the face of the waiver it's inadequate as a matter of law, that rebutts any potential presumption that the written waiver would be efficient for that purpose. I think I've overstayed my minute, but I'm willing to answer any further questions if the Court has them. Well, can we go just down the rest of that? Pardon? Do you have the rest of the transcript there? I have that whole passage, yes. Yes. I'm just confused about the what happens next. Since the Court and Mr. Espinoza, you served as an interpreter for your client at the time. Is that correct? So Espinoza is the defense lawyer? Correct. Okay. And Mr. Espinoza says, yes, I did, Your Honor. And the Court says, all right. And so we have the signature of Mr. Baylon Santana. And Mr. Early, this is your signature as well. Who's Mr. Early? Mr. Early is the government lawyer at that time. He's the AUSA. I see. At that time. I see. His consent, I gather. Yes. Oh, oh, oh. That's his. I see. I see. That's the government's consent. That's correct. Right. So in the entire passage, there is no colloquy on the merits of does the defendant understand it or of what he's been led to understand. And it never addressed anything. The Court then says, I find, based upon the written way, but once again, the defendant has no only intelligent involuntary way, it is right to have a merit trial to a jury. That's correct. And we would contend that there's no basis for that finding based on the paperwork. And this is uncharacteristically summary for Gestapo, who's a very careful judge. I have been in front of him many times, and I agree with the Court on that. But this one went by for whatever reason. Okay. Thank you, counsel. Good argument on both sides. Thank you. Cratchit, you will stand surrounded.
judges: Canby, Kozinski, Rawlinson